UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ADAM CHASTEEN,
Plaintiff

Case No. 1:09-cv-413
Beckwith, J.
Litkovitz, M.J.

vs

WANZA JACKSON, et al.,
Defendants.

REPORT AND RECOMMENDATION

This matter is before the Court on defendants Wanza Jackson, Dr. James McWeeney, Ernie Moore, and William Eleby's motion to dismiss the amended complaint (Doc. 27) and plaintiff's memoranda in opposition. (Docs. 28, 34).

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974). *See also Erickson v. Pardus,* 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To avoid dismissal for failure to state a claim for relief, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 556). While the

Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. While the plaintiff need not plead specific facts, his statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93 (citations omitted).

Plaintiff, a former inmate at the Warren Correctional Institution (WCI), brings this action through counsel under 42 U.S.C. § 1983 against WCI Warden Wanza Jackson, WCI Dr. James McWeeney, Ohio Department of Rehabilitation and Correction (ODRC) Director Ernie Moore, ODRC Director of Classification and Reception William Eleby, and other WCI prison officials and corrections officers. Plaintiff brings his claims against the defendants in both their official and individual capacities. Plaintiff's amended complaint alleges the following facts:

> 20. On December 6, 2007, Plaintiff entered the Department of Rehabilitation and Corrections.
>
> 21. On January 15, 2008, Plaintiff was transferred to Warren Correctional Institution.
>
> 22. On January 15, 2008, Plaintiff was placed in a four man cell.
>
> 23. On January 15, 2008, Plaintiff complained to the sergeant that he feared for his safety in this four man cell.

24. On January 15, 2008, Plaintiff expressed concerns to the officers in 2D about being placed in a four man cell.

25. On January 16 and 18, 2008, Plaintiff sent correspondence to the Unit Manager complaining of the placement in a four man cell.

26. Plaintiff repeatedly expressed his concern about being placed in a four man cell.

27. On or about January 16, 2008, Plaintiff returned to his cell to find his personal items stolen.

28. On January 19, 2008, he wrote a letter to William Eleby expressing his fears and requesting assistance. He received no reply.

29. On January 19, 2008, Plaintiff was assaulted in the dayroom by one of his cellmates, Inmate Gordon.

30. Plaintiff states that as he was being escorted to receive medical care he was repeatedly threatened by other inmates in the day room.

31. Upon arriving at the infirmary, Plaintiff was directed to return to his cell block to retrieve his belongings by an unknown corrections officer.

32. Plaintiff protested, telling the officer that he was afraid and that the other inmates would assault him.

33. Plaintiff states that once he stepped into the cell block, Inmate Stevens assaulted him while he was handcuffed, bound at the waist and under an officer's escort.

34. On January 19, 2008, Plaintiff was taken to the emergency room of Middletown Hospital to be treated for contusions and lacerations in his nose resulting from the attack by Inmate Stevens.

35. Plaintiff, as well as Inmates Stevens and Gordon, were placed in disciplinary control.

36. On January 24, 2008, Defendant Lieutenant O'Neil told Plaintiff that Inmate Gordon would have a local separation from him and that Inmate Stevens would have an institutional separation from him.

37. On January 24, 2008, Plaintiff was released from segregation and went to

the vault to retrieve his belongings. Once there Plaintiff discovered his belongings had not been secured by the corrections officers.

38. On February 20, 2008, Plaintiff encountered Inmate Stevens at the chow hall where Inmate Stevens threatened him along with other inmates.

39. Plaintiff informed Sergeant Baker of 1D of his concerns for his safety.

40. On February 28, 2008, Inmate Gordon and Stevens along with another unknown inmate waited outside of Plaintiff's Housing Unit (1D). Plaintiff encountered the three inmates outside the chow hall. Moments later, Plaintiff was viciously, maliciously and brutally, assaulted and battered by inmates who had been in the general population of the prison, causing Plaintiff to suffer extreme physical pain and mental anguish and humiliation: the full extent of which cannot be measured. During the attack Plaintiff lost consciousness, when he awoke he was covered in blood.

41. As a result of the attack Plaintiff suffered a concussion and required stitches to seal his wounds incurred in the attack. Plaintiff has suffered headaches and disorientation following this attack.

42. Plaintiff was kept in an isolation cell in the infirmary after the attack.

43. Plaintiff was placed in security control. After this attack on February 28, 2008, Plaintiff was forced to remain shackled and handcuffed during visitation from family members.

44. On or about March 3, 2008, Plaintiff was to be released into population. Defendant Lieutenant O'Neil attempted to force Plaintiff to sign a liability waiver. Plaintiff refused and was placed in segregation.

45. Plaintiff has exhausted his institutional remedies pursuant to the Prisoner Litigation Reform Act of 1995.

46. On April 22, 2008, Plaintiff was transferred to Mansfield Correctional Institution.

47. Plaintiff was treated by the Medical staff at Mansfield. There was no record of any of the aforementioned injuries in his medical file. Plaintiff received different prescriptions for his headaches and disorientation.

48. Defendants John Doe and the Ohio Department of Corrections and Rehabilitation and their officers, agents, assistants and employees individually

and collectively were grossly negligent in:

a. Placing Plaintiff in a four man cell in cell block 2D of Warren Correctional with few corrections staff monitoring said cell;

b. after being put on notice by the Plaintiff failing to take measures to correct the possibly volatile situation;

c. failing to protect Plaintiff from the attack by Inmate Stevens, Gordon and others;

d. failing to fully investigate the incident;

e. failing to properly treat the Plaintiff for his injuries.

49. The acts of defendants, and each of them, subjected plaintiff to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and have caused plaintiff to suffer damages in an amount to be determined at trial in this action.

(Doc. 21).

## I. The complaint against defendants Jackson, McWeeney, Moore, and Eleby in their official capacities should be dismissed.

In this case, the complaint against the defendants in their official capacities must be dismissed. A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents, *i.e.,* the State of Ohio. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). However, the State of Ohio is immune from suit in this federal court.

Absent an express waiver, the Eleventh Amendment to the United States Constitution bars suit against a State or one of its agencies or departments in federal court regardless of the nature of the relief sought. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996); *Pennhurst State School v. Halderman*, 465 U.S. 89, 100 (1984); *Alabama v. Pugh*, 438 U.S.

5

781, 782 (1978); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The exceptions to the Eleventh Amendment bar of suits in federal court against a state do not apply in this case. The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment rights. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976), *cert. denied*, 430 U.S. 946 (1977); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Nor has plaintiff sued a state official seeking prospective relief for future constitutional violations. *Ex Parte Young*, 209 U.S. 123 (1908). In addition, Congress did not "explicitly and by clear language" express its intent to "abrogate the Eleventh Amendment immunity of the States" in enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 341-43, 345 (1979). Plaintiff's action against defendants in their official capacities are included in this bar. *Will*, 491 U.S. at 70-71; *Scheuer v. Rhodes*, 416 U.S. 232 (1974). Therefore, plaintiff's claims for monetary and injunctive relief against the State of Ohio should be dismissed.

## II. Defendants' motion to dismiss defendants Jackson and Eleby should be denied.

### A. Defendant Jackson

To state an Eighth Amendment claim against prison officials based on their failure to protect him from attack by other inmates, plaintiff must allege facts showing that defendants' conduct amounted to "deliberate indifference" to a known risk of harm to plaintiff. *Farmer v. Brennan*, 511 U.S. 825 (1994). *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Marsh v. Arn*, 937 F.2d 1056, 1060-61 (6th Cir. 1991); *Walker v. Norris*, 917 F.2d 1449, 1453-54 (6th Cir. 1990). A prison official

6

may be held liable for his failure to protect inmates from attacks by other inmates only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835; *Gibson*, 963 F.2d at 853. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844.

The amended complaint alleges that defendant Jackson, the WCI Warden, violated plaintiff's Eighth Amendment rights by "failing to adequately train and supervise her agents pursuant to a state practice or policy." (Doc. 21, ¶53). Plaintiff alleges that Jackson "was negligent in supervising and controlling the correctional officers under her control, including but not limited to those employees listed as defendant[s] in this lawsuit." *Id.* The amended complaint contains no other allegations against defendant Jackson.

In response to the motion to dismiss, plaintiff alleges that he "had written all appropriate authorities in seeking protection from this known fear" and that Warden Jackson "had knowledge of the concerns expressed by the Plaintiff and did nothing." (Doc. 28 at 10). Plaintiff alleges that the incident report and any grievance or concern "should have been copied to the warden." *Id.*

To the extent plaintiff alleges defendant Jackson should be liable under § 1983 based on her failure to train or supervise her subordinates, the amended complaint fails to state a claim upon which relief may be granted. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied,* 530 U.S. 1264 (2000) (quoting *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir.), *cert. denied,* 459 U.S. 833 (1982)). *See also McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). "[G]eneral allegations are insufficient to support a failure-to-train claim. . . ." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). *See also Phillips v. Roane County*, 534 F.3d 531, 543-44 (6th Cir. 2008).

Plaintiff's complaint generally alleges that defendant Jackson failed to properly train the corrections officers under her control. However, to establish supervisory liability, it is not enough to point after the fact to a particular sort of training which, if provided, might have prevented the harm suffered in a given case. Rather, such liability attaches only if a constitutional violation is "part of a pattern" of misconduct, or "where there is essentially a complete failure to train . . ., or training that is so reckless or grossly negligent that future. . . misconduct is almost inevitable or would properly be characterized as substantially certain to occur." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.) (citations omitted), *cert. denied,* 459 U.S. 833 (1982). Only under these circumstances can it be said that a supervisor's liability

8

rests upon "active unconstitutional behavior," as opposed to "a mere failure to act." *Shehee*, 199 F.3d at 300 (internal quotation marks and citation omitted).

Here, plaintiff fails to allege facts showing that the attack by his fellow inmates was part of a pattern of comparable violations, as opposed to isolated occurrences. Nor has plaintiff alleged facts suggesting that the attack was an "almost inevitable" or "substantially certain" byproduct of a lack of training of corrections officers. *Hays*, 668 F.2d at 874. Plaintiff acknowledges that the doctrine of *respondeat superior* does not apply to § 1983 claims and may not serve as a basis for liability against defendant Jackson. (Doc. 28 at 5). *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992), *cert. denied*, 509 U.S. 903 (1993). Yet, that is precisely what plaintiff alleges with regard to his failure to train theory in the amended complaint.

Nevertheless, plaintiff's memorandum in opposition to the motion to dismiss the amended complaint alleges that Warden Jackson "had knowledge" of the threats against plaintiff because "all appropriate authorities" were notified, yet despite this knowledge "did nothing." (Doc. 28 at 10). Allegations suggesting subjective knowledge on the part of an official may be enough, if proven true, to establish the knowledge element of plaintiff's deliberate indifference to safety claim under *Farmer*. *See Williams v. McLemore*, 247 Fed. Appx. 1, 11 (6th Cir. 2007). Although the allegations that Warden Jackson knew of the threats but failed to take action should have been pled in the amended complaint, at this juncture the undersigned recommends that the motion to dismiss Warden Jackson be denied and that this claim be permitted to proceed for further development.

9

## B. Defendant Eleby

The amended complaint alleges that plaintiff wrote a letter to defendant Eleby about his fear for his safety, yet Eleby failed to respond. (Doc. 21, ¶28).

Defendants argue there is no indication that Eleby was presented with anything other than plaintiff's vague and generalized concerns and fears. Defendants also contend that while plaintiff complained about fears of being housed in a four-man cell, he never sustained any injury in the four-man cell. (Doc. 27 at 9).

Although plaintiff does not specify the contents of his letter to defendant Eleby, it is clear from the amended complaint that plaintiff expressed his fears to local officials for several days before going up the chain of command to Eleby to seek relief. This is sufficient for purposes of giving defendant Eleby fair notice of the deliberate indifference claim against him. The fact that plaintiff sustained his injuries in locations other than his four-man cell (*i.e.*, the day-room, upon entering the cell block, and in the chow hall) does not negate his claim for deliberate indifference to safety. Where an official is aware of a substantial risk to inmate safety, it is of no consequence that the plaintiff "was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer,* 511 U.S. at 842-43. *See also Greene v. Bowles,* 361 F.3d 290, 294 (6th Cir. 2004); *Curry v. Scott,* 249 F.3d 494, 507-508 (6th Cir. 2001). It follows that if the particular identity of the perpetrator is not determinative of an Eighth Amendment claim, the location of the attack is of no consequence so long as the official perceived a substantial risk of harm to the plaintiff and did nothing to address that risk. The amended complaint adequately alleges that plaintiff feared attack by his cell-mates and that

10

those fears were ultimately borne out on three occasions. Therefore, the motion to dismiss plaintiff's Eighth Amendment claim against defendant Eleby should be denied.

### III. Defendants' motion to dismiss defendant Moore should be granted.

The amended complaint contains no factual allegations against defendant Ernie Moore, the current director of the Ohio Department of Rehabilitation. In response to the motion to dismiss, plaintiff suggests that because the complaint contains allegations concerning former ODRC Director Terry Collins, those allegations should be imputed to current Director Moore. (Doc. 28 at 8). The Court disagrees.

Under the circumstances presented by this case, the only way plaintiff could hold current ODRC Director Moore liable for actions taken by former ODRC Director Collins is by suing Moore in his official capacity for purposes of seeking prospective injunctive relief. One exception to the Eleventh Amendment bar prohibiting suit in federal courts against the State is where the plaintiff seeks prospective injunctive relief to compel state officials to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908). *See also S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Yet, plaintiff's amended complaint fails to specify any deficient policies or practices which led or contributed to the harm plaintiff allegedly suffered, nor does plaintiff seek prospective injunctive relief to change any such policies.

In his memorandum in opposition to the motion to dismiss, plaintiff appears not to challenge any deficient ODRC policies as constitutionally infirm, but rather the failure of prison officials to adhere to existing ODRC policies. Plaintiff suggests that had the warden complied with the threat-reporting requirements of Ohio Admin. Code § 5120-9-24, requiring the warden to promptly report serious threats to the safety of a prisoner to the Director of the

11

ODRC, then the ODRC Director would have known of the threat to plaintiff's safety: "Plaintiff reported this matter to his unit manager who *should have* reported this [to the] warden who *should have* reported this incident to the Director." (Doc. 28 at 8) (emphasis added).

However, a negligent failure to comply with prison policies is insufficient to impose liability on the ODRC director under the Eighth Amendment. *Farmer*, 511 U.S. at 837. It is not enough that a prison official "should" have perceived a significant risk, but did not. *Id.* Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835. Plaintiff's allegations amount to nothing more than a negligent failure to adhere to existing policies and do not indicate the ODRC director knew that plaintiff faced a substantial risk of serious harm and disregarded that risk. *Farmer*, 511 U.S. at 847.

In reality, plaintiff is seeking to impose liability on defendant Moore by virtue of his supervisory responsibilities over Ohio's prison system. As discussed above, *respondeat superior* does not apply to § 1983 claims and may not serve as a basis for liability on defendant Moore. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992), *cert. denied*, 509 U.S. 903 (1993). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948. In the absence of any such allegations against defendant Moore in plaintiff's amended complaint, defendants' motion to dismiss the amended complaint against defendant Moore should be granted.

### IV. The motion to dismiss defendant McWeeney should be denied.

In order to state a claim for relief under 42 U.S.C. § 1983 for a denial of medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner who is allowed to suffer needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering. Plaintiff must allege that prison officials have denied his reasonable requests for medical care when such need is obvious, and when he is susceptible to undue suffering or threat of tangible residual injury. *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Estelle*, 429 U.S. at 106. Where medical assistance has been administered, such treatment must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a cause of action under § 1983. *Westlake*, 537 F.2d at 860-61 n.5. Allegations of negligence in diagnosing or treating medical conditions are not actionable under § 1983. *Estelle*, 429 U.S. at 106; *Byrd*, 701 F.2d at 595 n.2; *Westlake*, 537 F.2d at 860-61 n.5. A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement, including proper medical care, only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Plaintiff alleges facts showing he suffered a severe beating which left him unconscious and lying in his own blood. Plaintiff alleges that Dr. McWeeney "failed to diagnose that Plaintiff suffered from a concussion and failed to properly suture Plaintiff's wounds." Plaintiff

alleges he received no treatment for post-concussive syndrome from Dr. McWeeney and that when he was transferred to the Mansfield Correctional Institution, there was no record of his injury or treatment in his medical file. He alleges he continues to suffer from headaches and disorientation as a result of the beating and inadequate medical treatment.

Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs against defendant McWeeney is deserving of further development and should be permitted to proceed. Plaintiff's amended complaint gives defendants fair notice of plaintiff's Eighth Amendment claim against defendant McWeeney. The amended complaint alleges sufficient facts to allow the Court to draw the reasonable inference that defendant McWeeney is liable for deliberate indifference to plaintiff's serious medical needs. *Iqbal,* 129 S.Ct. at 1949. Accordingly, defendants' motion to dismiss defendant McWeeney should be denied.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion to dismiss be denied in part and granted in part as follows:

   a. Defendants' motion to dismiss plaintiff's claims against defendants Jackson, McWeeney, Moore, and Eleby in their official capacities should be granted.

   b Defendants' motion to dismiss defendants Jackson, Eleby, and McWeeney in their individual capacities should be denied.

   c. Defendants' motion to dismiss defendant Moore in his individual capacity should be granted.

Date: 12/3/2010

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ADAM CHASTEEN,
Plaintiff

Case No. 1:09-cv-413
Beckwith, J.
Litkovitz, M.J.

vs

WANZA JACKSON, et al.,
Defendants

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).